W. E. MASSEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16078.  Promulgated November 20, 1928.

*Elwood Hamilton, Esq.*, for the petitioner.
*L. C. Mitchell, Esq.*, for the respondent.

OPINION.

LITTLETON: The first issue raised in this proceeding is whether taxable profit was realized by petitioner, a stockholder of the Old Dominion Oil Co., and, if so, how much, in the transactions in which oil leases were acquired from the Cliff Petroleum Co. and the Southwestern Petroleum Co. under an arrangement in which funds were furnished by stockholders of the Dominion Company for the purchase of the leases and later stock was issued by the Dominion Company to these stockholders on account of the funds so furnished. This same transaction was before the Board in *V. J. Bulleit*, 3 B. T. A. 631. On the evidence there presented, we held that the transaction amounted to an investment on the part of the stockholders when the funds were furnished or invested for the acquisition of the leases and that taxable profit arose at the time the stock was issued to the stockholders, the amount of the taxable profit being the difference between the amount invested and the market value of the stock received.

The additional contentions raised and evidence presented which were not before us in the *Bulleit* case were considered by us in the case of *R. V. Board*, another party to the same transaction, which was decided today. On the basis thereof, we affirm our former conclusion that this was a transaction which gave rise to profit and that the fair market value of the stock received was $1.75 a share. In the *Board* case we had not only the original contribution but also the cost of the additional rights, and we were thus able to determine the net profit on the venture as the difference between the total amount invested by Board and the amount realized in stock (at its market value) on account of all rights held. In this proceeding we have the original contribution or payment, but do not have the cost of the rights subsequently acquired. However, since the additional rights were acquired within a short time prior to July 31, 1919, and since the value of the rights appear not to have increased to any

material extent from the dates of acquisition to July 31, 1919, when the stock was issued, we will disregard the rights and stock issued on account thereof in determining the profit from the venture and compute the profit on the basis of the original contribution of $9,200 and the 18,400 shares of stock issued on account thereof. The taxable profit is accordingly $23,000—$33,200 (18,400 shares at $1.75 per share) less $9,200 (the original contribution).

The issue as to the pipe-line distribution was before us to-day in the proceeding of *R. V. Board*, another party to the same transaction, and is here presented on the same evidence as there considered. From the conclusion reached in that case it follows that the petitioner is taxable on the $18,130.66 which was received as his share of the profit in the pipe-line venture.

The contention made by the petitioner as to the liquidation of the Dixie Motor Car Co. is that he was in error when he reported a taxable profit therefrom in 1919 but that this profit was taxable only in 1926 when the suit against the petitioner, as one of the transferees, was finally dismissed. The amount of the profit (and this is not in dispute) was paid to the petitioner in 1919, and, apparently, no question was raised as to the right of the petitioner to the total amount received until after a revenue agent's examination in 1923. Suit was brought in 1925 and decided in petitioner's favor in 1926. Had it been finally determined in 1926 that the petitioner should not have received all or any part of the profit which he reported more basis might exist for the petitioner's claim, but where the amount in question was paid to the petitioner in 1919 when no controversy existed as to its correctness and where, after controversy, it is decided that the amount paid in the first instance was not improperty paid, we fail to see any basis for holding that this amount should not be considered as taxable income when paid, in 1919.

With respect to the error assigned by the petitioner on account of dividends received by him from the Old Dominion Oil Co. in 1919 and 1920, the Commissioner, at the final hearing and in his brief, admitted that these dividends were nontaxable. Likewise, the Commissioner confessed error as to the automobile expense of $506.80, which was disallowed by him in 1921. Correction should be made accordingly.

The final issue raised in this proceeding is whether the petitioner is entitled to an exemption as the head of a family for 1919, 1920, and 1921. Section 216 (c) of the Revenue Act of 1918 reads in part as follows:

In the case of a single person, a personal exemption of $1,000, or in the case of the head of a family or a married person living with husband or wife, a personal exemption of $2,000.

The basis of the petitioner's claim is that during 1919, 1920, and 1921 his sister lived with him and kept house for him. It should be observed that this is not a claim that the petitioner should be allowed a credit or exemption on account of his sister, or even the mother, as a dependent, but rather that because the petitioner maintained a home in which the sister kept house for him, the petitioner is, therefore, the " head of a family " and entitled to an exemption as such. With this we can not agree. Here we have what seems to amount to little more than an arrangement of convenience, apparently helpful and beneficial to both parties, in which the sister superintends the operation of her brother's household and, in return, is provided with a home in which she lives and also with other support in the way of having her expenses paid. We are of opinion that the Commissioner's action as to this issue was correct. *Hannah D. Stratton*, 5 B. T. A. 1025.

*Judgment will be entered under Rule 50.*